2005 ME 25

**STATE of Maine**

v.

**Bruce MANN.**

Supreme Judicial Court of Maine.

Argued: Nov. 16, 2004.

Decided: Feb. 8, 2005.

*tional* patrol services to municipalities in

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (oral-

some counties. *Id.* at 32–33.

ly), Lisa P. Marchese, Asst. Atty. Gen., Augusta, for State.

Stephen C. Smith. (orally), Law Offices of Stephen C. Smith, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Bruce Mann appeals from a judgment of conviction entered in the Superior Court (Penobscot County, *Mead, J.*) after a jury found him guilty of manslaughter (Class A) in violation of 17–A M.R.S.A. § 203(1)(A) (Supp.2001). Mann argues that the trial court erred in denying his requested jury instruction regarding self-defense. Because the jury instructions given by the trial court adequately covered the prosecution's burden of proof on Mann's claim of self-defense, we affirm the judgment.

[¶ 2] Mann also argues that the evidence was insufficient to support his conviction. Viewing the evidence in the light most favorable to the State, we find that the jury could have determined beyond a reasonable doubt that Mann was guilty of every element of manslaughter, *see State v. Michaud*, 1998 ME 251, ¶ 11, 724 A.2d 1222, 1228, and do not address this point further.

## I. BACKGROUND

[¶ 3] On November 6, 2001, Jack Sears turned forty. To celebrate, he and his girlfriend, Carolyn Fish, embarked upon a drinking binge at their apartment. Several of their friends, including Bruce Mann, joined them. For the first day, the drinking proceeded without incident.

[¶ 4] On the evening of November 7, however, Sears and Mann were involved in two physical altercations. The first came after Sears called Mann a name after Mann rolled him a cigarette. Mann got up, walked over to Sears, and hit and kicked him several times. Sears offered little resistance. The force of Mann's blows broke the chair Sears was sitting in. After Mann walked away, Sears got up and went downstairs into a hallway, where he continued to smoke and drink.

[¶ 5] Fish eventually went downstairs to see Sears. He blamed her for the altercation. She got angry and went back upstairs, which prompted Mann to go downstairs and confront Sears a second time. According to Mann, Sears grabbed him by the hair and kneed him in the face. Mann broke Sears's hold, swung him into a wall and punched and kicked him in the head and body. Sears again offered little resistance. Before Mann returned upstairs, he warned Sears not to bother Fish again.

[¶ 6] Fish came back downstairs and helped Sears to bed. She left Sears lying facedown in the bed, and rejoined the party in the living room. The next morning, some of those staying at the apartment checked on Sears and grew concerned about his condition. Then guests summoned a private ambulance to take Sears to the hospital, where he died. It was determined that Sears died from a subdural hematoma, a blood clot between his brain and skull.

[¶ 7] The partygoers initially told police that Sears sustained his injuries in a fall. Eventually the police obtained statements from those at the party, including Fish, implicating Mann. Mann was charged with manslaughter (Class A), pursuant to 17–A M.R.S.A. § 203(1)(A). He pleaded not guilty.

[¶ 8] At trial, the State called several witnesses who testified about the altercations between Sears and Mann. Mann tes-

tified that he struck Sears in self-defense. The jury returned a verdict of guilty on September 26, 2002. Mann's post-trial motions for acquittal and a new trial were denied. The court sentenced Mann to fourteen years imprisonment, all but nine suspended. Mann filed a timely appeal to this Court.

## II. JURY INSTRUCTION

■ [¶ 9] Mann argues that the Superior Court erred when it denied his request to give the following jury instruction regarding self-defense:

> If you find that force was used upon the Defendant by the decedent, the Defendant had the right to use sufficient force [to] ward off the assault made upon him, but the Defendant may only use such force so far as is necessary to make him stop.

> If you find the Defendant's actions in striking the decedent were initially necessary to ward off an assault but at some point became unnecessary to repel the decedent's attack, the State bears the burden of proof of showing that it was the Defendant's later unlawful blows and not his initial lawful blows that caused decedent's death.

Instead, the court gave standard instructions regarding the prosecution's burden of proof, causation, and self-defense:

> Now, bear in mind that the burden of proof is entirely upon the State. The defendant doesn't have to prove anything. Throughout the trial, he's favored with something known as the presumption of innocence. And that means that, even though he is charged here with an offense, he comes before you with a clean slate. That presumption of innocence stays with him all through the trial, through the arguments, through your deliberations, up to the point, if you reach the point, where you're satisfied beyond a reasonable doubt that the State has proven the elements of the offense.

> * * *

> The defendant in this case is charged by way of indictment with a single crime of reckless or criminally negligent manslaughter. I'll instruct you on what law you need to apply to determine whether the State has established beyond a reasonable doubt each of the elements necessary to constitute the crime of reckless or criminally negligent manslaughter . . . .

> Regarding the second element, that the defendant caused the death of Jack J. Sears, the State must prove beyond a reasonable doubt that his death would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the death and the conduct of the defendant was clearly insufficient.

> * * *

> I want to talk to you briefly about the concept known in the law as justification. I'll talk to you about the justification known as self-defense.

> A couple of general concepts regarding justification. The State, as you know, bears the burden of proof on all elements, including if the—regarding the justification of self-defense to disprove its existence. If a—if the justification of self-defense is precluded solely because of the requirement that the person's belief be reasonable has not been met, the person still may be convicted of this crime for which recklessness and criminal negligence suffices and then only if holding the belief, when viewed in the light of the nature and purpose of

the person's conduct and the circumstances known to him, is grossly deviant from what a reasonable and prudent person would believe in the same situation.

All right. This is the justification known as physical force in defense of a person. A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend himself from what he reasonably believes to be the imminent use of unlawful nondeadly force by such other person, and he may use a degree of force which he reasonably believes to be necessary for such purpose. However, such force is not justifiable if, with a purpose to cause physical harm to another person, he provoked the use of unlawful, nondeadly force by such other person. Such force is not justifiable if he was the initial aggressor unless, after such aggression, he withdraws from the encounter and effectively communicates to such other person his intent to do so but the latter, notwithstanding, continues the use or threat of unlawful, nondeadly force.

[¶ 10] We review a trial court's denial of a requested jury instruction for prejudicial error. *State v. Doyon*, 1999 ME 185, ¶ 7, 745 A.2d 365, 367. We will not vacate a judgment based on a denied jury instruction unless the appealing party can demonstrate that the denied instruction (1) stated the law correctly; (2) was generated by the evidence in the case; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave. *State v. McLean*, 2002 ME 171, ¶ 17, 815 A.2d 799, 805 (quoting *Clewley v. Whitney*, 2002 ME 61, ¶ 8, 794 A.2d 87, 90).

[¶ 11] Mann contends that the proposed instruction was needed to inform the jury that prosecutors bore the burden of proving that the fatal blow was not inflicted in self-defense. Even if we assume that Mann's proposed instruction adequately states Maine law, was generated by the evidence, and was not misleading or confusing, the trial court's instructions adequately covered the prosecution's burden of proof.

[¶ 12] The court accurately conveyed the prosecution's burden of proof pursuant to 17–A M.R.S.A. § 101(1) (Supp.2004) when it told the jury, "the State, as you know, bears the burden of proof on all elements, including if the—regarding the justification of self-defense to disprove its existence." [1] The court also instructed the jury regarding causation pursuant to 17–A M.R.S.A. § 33 (1983), and self-defense pursuant to 17–A M.R.S.A. § 108(1) (1983). [2]

---

1. Title 17–A M.R.S.A. § 101(1) states:

   The State is not required to negate any facts expressly designated as a "defense," or any exception, exclusion or authorization that is set out in the statute defining the crime by proof at trial, unless the existence of the defense, exception, exclusion or authorization is in issue as a result of evidence admitted at the trial that is sufficient to raise a reasonable doubt on the issue, in which case the State must disprove its existence beyond a reasonable doubt. This subsection does not require a trial judge to instruct on an issue that has been waived by the defendant. The subject of waiver is addressed by the Maine Rules of Criminal Procedure.
   17–A M.R.S.A. § 101(1) (Supp.2004).

2. Title 17–A M.R.S.A. § 33 states:
   Unless otherwise provided, when causing a result is an element of a crime, causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient.
   17–A M.R.S.A. § 33 (1983).
   Title 17–A M.R.S.A. § 108(1) states:

[¶ 13] When jury instructions closely parallel the provisions of the Maine Criminal Code, they are adequate to provide the jury with the necessary information. *See State v. Franzen*, 461 A.2d 1068, 1073 (Me.1983); *State v. Sullivan*, 1997 ME 71, ¶ 6, 695 A.2d 115, 117. The trial court's instructions also were consistent with the representative criminal instructions set out in the *Maine Jury Instruction Manual* §§ 6–7, 6–58 (4th ed. 2004). The denial of Mann's proposed instruction did not result in prejudicial error.

The entry is:

Judgment affirmed.

SAUFLEY, C.J., files dissenting opinion joined by CALKINS and LEVY, JJ.

SAUFLEY, C.J., dissenting, with whom CALKINS and LEVY, JJ., join.

[¶ 14] The Court concludes that the instructions delivered by the court "adequately covered the prosecution's burden of proof" on Mann's claim of self-defense. Because we would conclude that the instructions failed to make clear to the jury that the State bore the burden of proving that Mann's unjustified conduct caused the victim's death, we dissent.

[¶ 15] The court properly gave an instruction that "[t]he State, as you know, bears the burden of proof on all elements, including ... the justification of self-defense to disprove its existence." *See* 17–A M.R.S.A. § 101(1) (Supp.2004); *State v. Wilder*, 2000 ME 32, ¶ 25, 748 A.2d 444, 451. After giving this instruction, however, the court gave the standard, yet confusing, instruction about the State's burden of proving the unreasonableness of Mann's belief that the victim was going to use force against him, before providing the instruction on how the justification is defined.

[I]f the justification of self-defense is precluded solely because of the requirement that the person's belief be reasonable has not been met, the person still may be convicted of this crime for which recklessness and criminal negligence suffices and then only if holding the belief, when viewed in the light of the nature and purpose of the person's conduct and the circumstances known to him, is grossly deviant from what a reasonable and prudent person would believe in the same situation.

This instruction, drawn from statutes, 17–A M.R.S.A. §§ 101(3), 108 (1983 & Supp. 2004), as we have authorized, *State v. Sullivan*, 1997 ME 71, ¶ 6, 695 A.2d 115, 117, is difficult for a legal scholar to follow, let alone a lay juror.

[¶ 16] The court then went on to instruct on physical force in defense of a person. Again, the court drew the language from the statute. 17–A M.R.S.A. § 108(1) (1983). This instruction did not, however,

A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend himself or a 3rd person from what he reasonably believes to be the imminent use of unlawful, nondeadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose. However, such force is not justifiable if:
A. With a purpose to cause physical harm to another person, he provoked the use of unlawful, nondeadly force by such other person; or
B. He was the initial aggressor, unless after such aggression he withdraws from the encounter and effectively communicates to such other person his intent to do so, but the latter notwithstanding continues the use or threat of unlawful, nondeadly force; or
C. The force involved was the product of a combat by agreement not authorized by law.
17–A M.R.S.A. § 108(1) (1983).

advise the jury of its responsibility to hold the State to its burden of proof:

> This is the justification known as physical force in defense of a person. A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend himself from what he reasonably believes to be the imminent use of unlawful nondeadly force by such other person, and he may use a degree of force which he reasonably believes to be necessary for such purpose.

[¶ 17] In contrast, Mann's additional proposed jury instruction, slightly altered, would have provided a full and accurate description of the State's burden of proving that Mann was unjustified in his use of force:

> If you find that the Defendant's actions in striking the decedent were ... to ward off an assault but at some point [were] unnecessary to repel the decedent's attack, the State bears the burden of proof of showing that it was the Defendant's ... unlawful blows and not his ... lawful blows that caused the decedent's death.

This proposed instruction is consistent with Maine law,[3] is generated by the evidence, and is not misleading or confusing. *State v. McLean,* 2002 ME 171, ¶ 17, 815 A.2d 799, 805. We would conclude that because the instructions delivered to the jury did not cover this content, they did not make explicit that the State bore the burden of proving that unlawful, rather than justified, conduct caused the victim's death.

[¶ 18] We do not fault the trial court. We have certainly condoned convoluted self-defense instructions. We believe, however, that the time has come to require simple, straightforward instructions on this basic defense. The defendant's counsel proposed something close to that.

[¶ 19] Accordingly, we would remand for a new trial.

---

**3.** Although Mann advocates the adoption of a rule based on the Vermont Supreme Court case of *State v. Rounds,* 104 Vt. 442, 160 A. 249 (1932), the proposed instruction does not require the adoption of a new rule. As modified, Mann's proposed instruction is consistent with existing Maine law. *See* 17–A M.R.S.A. §§ 101(1), 108 (1983 & Supp.2004).