2008 ME 121

**STATE of Maine**

v.

**John BARRETTO.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 2, 2008.
Decided: July 22, 2008.

---

Luke M. Rossignol, Esq., Bemis & Rossignol, LLC, Presque Isle, ME, for John Barretto.

Neale T. Adams, District Attorney, Todd R. Collins, Asst. Dist. Atty., Caribou, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶1] John Barretto appeals from a judgment of conviction of aggravated assault (Class B), 17–A M.R.S. § 208(1)(B), (2) (2007), entered in the Superior Court (Aroostook County, *Hunter, J.*) upon a jury verdict of guilty. Barretto argues that, in addition to the court's instruction on the use of deadly force in self-defense, an instruction on the use of nondeadly force in self-defense was generated by Barretto's testimony that he was defending himself from attack when he used a knife against the victim. We discern no error in the court's refusal to instruct the jury on the use of nondeadly force in self-defense, and we affirm the judgment of conviction.

## I. BACKGROUND

[¶2] On July 4, 2006, John Barretto and the victim were involved in an altercation during which Barretto stabbed the victim in the back of his left shoulder and severely cut the victim's right little finger. Barretto was charged with aggravated assault, he pleaded not guilty, and a jury found him guilty of the aggravated assault.

[¶3] At trial, Barretto did not dispute testimony that he inflicted substantial bodily injury on the victim. Rather, he argued that he was justified in the use of force because he was afraid that the victim was trying to kill him. On appeal, Barretto argues that the trial court should have instructed the jury on the use of nondeadly force in self-defense because he used the knife to defend himself without any intention to kill.

[¶4] To determine whether Barretto was entitled to his requested jury instruction, we view the facts in the light most favorable to Barretto to assess whether the evidence is sufficient to render "the existence of all facts constituting the defense a reasonable hypothesis for the fact finder to entertain." *State v. Neild,* 2006 ME 91, ¶9, 903 A.2d 339, 341 (quotation marks omitted). At trial, the victim testified that Barretto had been the aggressor, but Barretto testified that he had only been defending himself from the victim's attack. Specifically, Barretto testified to the following facts. A friend drove Barretto and the victim to a convenience store after Barretto and the victim had been

drinking. Barretto moved from the backseat to the front passenger seat of the vehicle while the other two men were inside the convenience store. The victim came out of the store, reached in through the passenger window, punched Barretto in the face without warning, held Barretto down, twisted Barretto's shirt around his neck, drove his fist into Barretto's neck, and punched Barretto in the head about 100 times. Barretto thought the victim was going to kill him, and he thought the victim had a knife on his person. Barretto reached into his pants pocket, pulled out his knife, and attempted to stab the victim in the arm, though he actually stabbed the victim in the back part of his shoulder. Barretto testified that he was not trying to kill the victim.

[¶ 5] According to Barretto, the victim then hauled Barretto out of the vehicle by his feet, and, after Barretto stood up, the victim came toward Barretto punching and swinging. Although Barretto could not recall his knife coming into contact with the victim, Barretto did have his knife in front of him at this point.

[¶ 6] The victim went back into the convenience store, came back out, and said that he had a bad cut. Barretto looked at the victim's bleeding hand and said that the victim needed to go to the hospital. The three men got into the vehicle and went to the emergency room at Cary Medical Center. When they arrived at the emergency room door, the victim got out of the vehicle, went inside by himself, and obtained treatment for his wounds. Barretto was later arrested at his home.

[¶ 7] Based on his trial testimony, Barretto requested that the court deliver jury instructions on self-defense both through the use of nondeadly force and through the use of deadly force. The court refused Barretto's request to instruct on self-defense using nondeadly force and instructed only on the use of deadly force in self-defense.

[¶ 8] The jury rejected Barretto's self-defense claim and found him guilty of aggravated assault. The court entered a judgment sentencing Barretto to five years in prison, all but eighteen months suspended, with three years of probation. The court also ordered Barretto to pay $30,304.85 in restitution and $385 in fines, surcharges, and assessments. Barretto timely appealed.

## II. DISCUSSION

 [¶ 9] We review the denial of Barretto's requested nondeadly force jury instruction for prejudicial error. *See State v. Mann*, 2005 ME 25, ¶ 10, 868 A.2d 183, 186. We will vacate a judgment for failure to deliver a requested jury instruction only if "the appealing party can demonstrate that the denied instruction (1) stated the law correctly; (2) was generated by the evidence in the case; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave." *Id.*

[¶ 10] Barretto does not dispute that an instruction on the use of deadly force in self-defense was generated, but he contends that his testimony also generated an instruction on the use of nondeadly force in self-defense. He argues that, because he did not intend to kill the victim and was only using the knife to defend himself against an attack, his actions could reasonably be viewed as having risen only to the level of nondeadly force. Barretto's argument, however, confuses the nature of his intentions with the nature of the force used.

 [¶ 11] To determine whether a nondeadly force jury instruction was generated, we assess whether Barretto's conduct in intentionally using a knife on another person during a close, personal,

physical conflict could reasonably be viewed as the use of nondeadly force rather than deadly force. As in *State v. Williams*, we review de novo whether the conduct at issue constitutes nondeadly force within the meaning of the self-defense statute. 433 A.2d 765, 768–70 (Me. 1981); *see also* Alexander, *Maine Jury Instruction Manual* § 6–58 comment at 6–85 to –86 (4th ed. 2008) ("In most cases the jury will not need to address the nature of the force. The nature of the force may be relevant to the court in deciding what instruction is appropriate.").

[¶ 12] The Maine Criminal Code in effect at the time of the crime establishes the difference between deadly and nondeadly force:

8. "Deadly force" means physical force which a person uses with the intent of causing, or which he knows to create a substantial risk of causing, death or serious bodily injury. Intentionally or recklessly discharging a firearm in the direction of another person or at a moving vehicle constitutes deadly force.

. . . .

18. "Nondeadly force" means any physical force which is not deadly force.

. . . .

23. "Serious bodily injury" means a bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health.

17–A M.R.S. § 2 (2006).[1] Because nondeadly force is defined as "any physical force which is not deadly force," 17–A M.R.S. § 2(18), we must determine whether the evidence of Barretto's use of the knife, viewed in any light, could be seen as falling outside the definition of deadly force, that is, outside the realm of force exercised by a person who intends to cause, or knows he is creating *a substantial risk of causing, death or serious bodily injury. Id.* § 2(8).

[¶ 13] The record, viewed in a light most favorable to Barretto, reveals that he did not merely brandish the knife, nor did he claim to have used it as a threat at a distance from the victim. *Cf. State v. Cannell*, 2007 ME 30, ¶¶ 7–10, 916 A.2d 231, 234. Rather, the undisputed evidence demonstrates that Barretto intended to use the knife to injure the victim and that he actually stabbed the victim in the shoulder and the hand. These facts demonstrate that Barretto engaged in conduct that he knew to create a substantial risk of serious bodily injury, *see* 17–A M.R.S. § 2(8), defined as "serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ," *id.* § 2(23).

[¶ 14] The use of a knife against another person can quickly cause substantial blood loss, injury to internal organs, loss of skin, injury to body parts (such as the finger in this case), or death.[2] Such inten-

---

1. The Legislature amended 17–A M.R.S. § 2 (2006), effective after the judgment was entered, to make the language gender-neutral. *See* P.L.2007, ch. 173, §§ 1, 2 (effective Sept. 20, 2007) (codified at 17–A M.R.S. § 2 (2007)); *see also* P.L.2007, ch. 476, § 1 (effective June 30, 2008) (to be codified at 17–A M.R.S. § 2(3–B)) (adding definition of term not at issue here).

2. The Maine Department of Public Safety reported the involvement of knives or cutting instruments in roughly 20% of aggravated assaults for each of the years from 2004 to 2006—the most recent years of reporting. *See* Me. Dep't of Public Safety, Crime in Maine 2006, at 31 (Sept. 7, 2007); Me. Dep't of Public Safety, Crime in Maine 2005, at 31 (Sept. 28, 2006); Me. Dep't of Public Safety, Crime in Maine 2004, at 31 (Nov. 9, 2005). For 2004 and 2005, the Department reported the use of knives or cutting instruments in 21.1% of murders and non-negligent man-

tional use of a knife against another person cannot be construed as anything other than the use of deadly force. Even if Barretto used that level of force only to defend himself, with no intention to kill, these facts do not alter the deadliness of the force used.

[¶ 15] We therefore conclude that, taking the facts in the light most favorable to Barretto, Barretto's use of the knife constituted deadly force. The court properly instructed on the use of deadly force in self-defense and was not required to instruct on the use of nondeadly force, defined as "any physical force which is *not* deadly force." 17–A M.R.S. § 2(18) (emphasis added). Because a nondeadly force instruction was not "generated by the evidence in the case," *Mann*, 2005 ME 25, ¶ 10, 868 A.2d at 186, the court did not err in declining to deliver the jury instruction that Barretto requested. We affirm the judgment of conviction entered upon the jury's verdict.

The entry is:

Judgment affirmed.

slaughters. *See* Me. Dep't of Public Safety, Crime in Maine 2005, at 23 (Sept. 28, 2006); Me. Dep't of Public Safety, Crime in Maine 2004, at 23 (Nov. 9, 2005). The Department reported the use of knives or cutting instru-

ments in 4.8% of murders and non-negligent manslaughters in 2006. Me. Dep't of Public Safety, Crime in Maine 2006, at 23 (Sept. 7, 2007).