2010 ME 6

**STATE of Maine**

v.

**John A. OKIE.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2009.

Decided: Feb. 2, 2010.

Peter J. DeTroy, Esq. (orally), Russell B. Pierce, Esq., Aaron K. Baltes, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for John A. Okie.

Janet T. Mills, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN. JJ.

GORMAN, J.

[¶ 1] John A. Okie appeals from two judgments of conviction for intentional and knowing murder, 17–A M.R.S. § 201(1)(A) (2009), entered in the Superior Court (Kennebec County, *Jabar, J.*) following a jury trial. Okie argues that the court improperly instructed the jury as to the defense of not criminally responsible by reason of insanity, that it erred in refusing his request for a curative instruction following the State's closing argument, and that it improperly calculated his sentence. We affirm the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] Okie concedes the following facts. Early on the morning of July 10, 2007, Okie went to the home of his friend and sometimes-sexual partner, Alexandra Mills (Aleigh), and the two engaged in sexual relations. Soon after, Okie attacked and killed Mills. Six days later, on July 16, 2007, after a heated argument with him, Okie attacked and killed his father, John Okie Sr.

[¶ 3] Okie was indicted in the Superior Court (Lincoln County) for the intentional and knowing murder of his father, and in the Superior Court (Kennebec County) for the intentional and knowing murder or depraved indifference murder of Mills, *see* 17–A M.R.S. § 201(1)(A), (B) (2009); the indictments were later consolidated in the Superior Court (Kennebec County). Okie pleaded not criminally responsible by reason of insanity to both murders, asserting that he suffered from paranoid schizophrenia at the time of both killings. *See* 17–A M.R.S. § 39 (2009).

[¶ 4] The court conducted an eight-day jury trial in December of 2008. Among other requests, Okie sought a jury instruction detailing the consequences of a verdict that determined him to be not criminally responsible by reason of insanity. More particularly, Okie requested an instruction informing the jury that a person found not criminally responsible by reason of insanity would be institutionalized by the Commissioner of the Department of Health and Human Services, and that certain criteria must be met, with court oversight, before that person could be discharged from institutional care. *See* 15 M.R.S. §§ 103, 104–A (2009). The court denied Okie's proposed instruction.[1]

---

1. The court gave the jury the following insanity verdict instruction:

With regard to the affirmative defense of not criminally responsible by reason of in-

[¶ 5]  During the State's closing argument, the prosecutor stated to the jury:

> So in order for you to find him not criminally responsible by mental disease or defect, you have to have—you have to believe first of all that he has a mental disease or defect, that the mental disease or defect existed at the time of the criminal event.  And that because of that mental disease or defect he lacked the substantial capacity to appreciate the wrongfulness of his conduct.  In other words, the defendant has to prove to you delusions, hallucinations, fixed firm beliefs.  And these delusions and hallucinations have to be gross and demonstrable.  Public insanity.  Those sort of crazy of the crazy, the worst of the worst.  And no one saw that.

Okie argued to the trial court that this closing statement misstated the law of insanity pursuant to 17–A M.R.S. § 39, and requested a curative instruction on that point, which the court also denied.

[¶ 6]  The jury found Okie guilty of intentional and knowing murder as to both victims.  The court entered a judgment on each verdict and sentenced Okie to thirty years in prison for each count, to be served consecutively.  Okie directly appeals his convictions, and also has been granted leave for review of his sentence pursuant to 15 M.R.S. § 2152 (2009).

## II.  DISCUSSION

### A.  Not Criminally Responsible By Reason of Insanity Jury Instruction

■  [¶ 7]  Okie first challenges the court's denial of his requested jury instruction informing the jury of the consequences of a verdict of not criminally responsible by reason of insanity.  He argues that such an instruction was necessary to dispel the jurors' natural assumption that an insanity verdict would result in Okie's immediate release from custody.

■  [¶ 8]  We consider jury instructions as a whole to ensure that they accurately and fairly informed the jury of the law, and to determine the potential for juror misunderstanding as a result of the instructions.  *State v. Roberts*, 2008 ME 112, ¶ 41, 951 A.2d 803, 815; *State v. Gauthier*, 2007 ME 156, ¶ 14, 939 A.2d 77, 81.  The denial of a requested jury instruction is reviewed for prejudicial error, and we vacate such a denial "only if the appealing party can demonstrate that the denied instruction (1) stated the law correctly;  (2) was generated by the evidence in the case;  (3) was not misleading or confusing;  and (4) was not sufficiently covered in the instructions the court gave." *State v. Barretto*, 2008 ME 121, ¶ 9, 953 A.2d 1138, 1140 (quotation marks omitted).  Jury instructions that track the language of the Criminal Code are generally adequate to

---

sanity, if you find that the state has proven to you beyond a reasonable doubt each of the elements of murder or manslaughter, in each case, you must then proceed to consider whether—whether that at the time of the conduct at issue the defendant had a mental disease or defect that would render him not criminally responsible for the crime by reason of insanity.  On this issue the defendant and not the state has the burden of proof, and they have to prove it to you by a preponderance of the evidence.  And they have to prove first that he was suffering from a mental disease or defect at the time of the alleged event, and second, as a result of the mental disease or defect the defendant lacked substantial capacity to appreciate the wrongfulness of his conduct.

A mental disease or defect means only those severely abnormal mental conditions that grossly and demonstrably impair[ ] a person's perception or understanding of reality.  An abnormality manifested only by repeated criminal conduct or excessive use of alcohol or drugs in and of itself does not constitute a mental disease or defect.

inform the jury of the applicable law. *Roberts,* 2008 ME 112, ¶ 43 n. 8, 951 A.2d at 815–16.

[¶ 9] We have long held that it is not appropriate to instruct the jury on the institutional consequences of an insanity verdict to a defendant. In 1963, we first decided that it is not error for a trial court to refuse a defendant's request for an instruction on the consequences of what was then a verdict of not guilty by reason of insanity. *State v. Park,* 159 Me. 328, 336, 193 A.2d 1, 5 (1963). In *State v. Wallace,* we considered a similar question, and upheld *Park.* 333 A.2d 72, 79 (Me.1975). Indeed, we have reconsidered, and reaffirmed, our decisions in *Park* and *Wallace* numerous times since 1963. *See State v. Condon,* 468 A.2d 1348, 1351 (Me.1983); *State v. Ruybal,* 398 A.2d 407, 415 (Me. 1979); *State v. Dyer,* 371 A.2d 1079, 1083 (Me.1977); *State v. Armstrong,* 344 A.2d 42, 46–47 (Me.1975).

[¶ 10] These Maine decisions also comport with interpretations of federal law. In *Shannon v. United States,* the United States Supreme Court considered this precise question and held that instructing the jury on the consequences of an insanity verdict is improper pursuant to the Insanity Defense Reform Act of 1984, 18 U.S.C.S. §§ 4241–4248 (LexisNexis 2008).[2] 512 U.S. 573, 575–88, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994).

[¶ 11] The practice of not informing the jury of the consequences of its verdict is justified in large part by the distinction between the roles of the judge and the jury. *Shannon,* 512 U.S. at 579, 114 S.Ct. 2419 ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting *Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975)). In Maine state courts, as in federal courts, judges determine what sentence to impose, and juries are charged only with finding facts and deciding the defendant's guilt based on those facts;[3] the consequences of a particular verdict are therefore technically irrelevant to the jury's task. *Shannon,* 512 U.S. at 579, 114 S.Ct. 2419. Thus, "providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* In Maine, too, "[i]t has long been the settled practice in our

**2.** The United States Supreme Court in *Shannon* did note, however, that some instruction may be necessary in very limited cases, such as when the prosecutor informs the jury that an insanity verdict would allow the defendant "go free." *Shannon v. United States,* 512 U.S. 573, 587, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994).

**3.** This is unlike the procedure in the majority of jurisdictions that do provide the jury with some instruction as to the consequences of an insanity verdict. Although more than twenty states permit or require a jury instruction detailing the consequences to a defendant found insane, most of these states also afford the jury a role in sentencing defendants in at least some types of cases; more particularly, most states that give such a jury instruction

are death penalty states that require the jury to sentence in capital cases. *See, e.g.,* Colo. Rev.Stat. § 18–1.3–1201 (LEXIS through 2009 Sess.); Kansas Stat. Ann. § 21–4624 (LEXIS through Supp.2008); Md.Code Ann. Criminal Law § 2–303 (LEXIS through 2009 Sess.); Nev.Rev.Stat. Ann. § 175.554 (LEXIS through 2007 Sess. & 2008 Special Sess.); N.H.Rev.Stat. Ann. § 630:5 (2007); N.C. Gen. Stat. § 15A–2002 (LEXIS through 2009 Sess.); Tenn.Code Ann. § 39–13–204 (LEXIS through 2009 Sess.); Utah Code Ann. § 76–3–207 (LEXIS through 2009 Sess.); *see also* Thomas M. Fleming, Annotation, Instructions in State Criminal Case in Which Defendant Pleads Insanity as to Hospital Confinement in Event of Acquittal, 81 A.L.R.4th 659 (1990) (collecting cases).

State that the function of the jury is to find the facts and to apply the law as given by the court to the facts in reaching their verdict" and that "[p]unishment, or whatever may transpire after the verdict, is not the concern of the jury." *Park,* 159 Me. at 336, 193 A.2d at 5. In this way, juries are discouraged from deciding cases on improper bases, such as sympathy for the victim, or from issuing results-oriented verdicts that deviate from the applicable law. *Cf. Shannon,* 512 U.S. at 590, 114 S.Ct. 2419 (Stevens, J., dissenting); *Commonwealth v. Mutina,* 366 Mass. 810, 323 N.E.2d 294, 298 (1975).

[¶ 12] In line with this reasoning, the court informed the jury in the instant matter, "[y]ou must not consider or be concerned about the consequences of any verdict you may reach in this case." Because juries are presumed to follow the court's instructions, in the absence of evidence to the contrary, the law assumes that the jury does not consider the consequences of its verdict whether the verdict is not guilty, guilty, or not criminally responsible by reason of insanity. *See State v. Bennett,* 658 A.2d 1058, 1063 (Me.1995).

[¶ 13] Okie offers us a host of reasons to reconsider our well-established precedent. He asserts that, notwithstanding the principle that juries are not to consider the consequences of their verdicts because sentencing is solely a function of the judge, and notwithstanding the presumption that jurors follow the instructions as given, an insanity verdict presents unique circumstances subject to common jury misunderstanding. He suggests that although jurors have a common lay understanding that a defendant guilty of a crime will be sentenced to some period of incarceration, they may have no such common understanding of what would happen if a defendant was found to be not criminally responsible for his crimes. *See Erdman v. State,* 315 Md. 46, 553 A.2d 244, 249 (1989). Okie argues that refusing to give such an instruction could result in the rendering of a guilty verdict even though the jurors believe the defendant is insane because they wish to avoid the risk that a dangerous person will otherwise go free.[4] *Shannon,* 512 U.S. at 588, 114 S.Ct. 2419 (Stevens, J., dissenting); ABA Criminal Justice Mental Health Standards § 7–6.8 cmt. at 380–81 (1989).

[¶ 14] Conspicuously absent not just from the record before us,[5] but also from the national precedent considering this issue, however, is any empirical data or other persuasive evidence suggesting that jurors in fact do suffer from the mistaken assumption that insane defendants are simply set free. As the United States Supreme Court noted, "there is no reason to assume that jurors believe that defendants found [not criminally responsible by reason of insanity] are immediately set free." *Shannon,* 512 U.S. at 585 n. 10, 114 S.Ct. 2419. Unless and until such empirical data or other persuasive evidence indicate otherwise, we decline Okie's invitation to reconsider *Park* and its progeny.[6] The

---

4. There is significant complexity to the possibilities for a defendant who is determined to be not guilty by reason of insanity, including the possibility of fairly expedited release from any psychiatric hospitalization or restriction.

5. During Okie's trial, Dr. Ann LeBlanc, director of the State Forensic Service, testified that "when defendants are found not criminally responsible, ... they are admitted to Riverview psychiatric hospital and we follow them for many, many years."

6. We are also not persuaded by Okie's contention that we should reconsider our prior decisions because of amendments to the insanity verdict statute enacted after the most recent decision in which we reaffirmed our holding that juries should not be instructed as to the consequences of an insanity verdict, *State v. Condon,* 468 A.2d 1348 (Me.1983). The 1983

court committed no error in denying Okie's requested jury instruction detailing the consequences to the defendant of a verdict of not criminally responsible by reason of insanity.

## B. Prosecutor's Closing Arguments

■ [¶ 15] Okie next challenges the court's failure to give the jury a curative instruction following the State's closing argument in which, Okie asserts, the prosecutor misstated the law regarding the proof necessary to support an insanity verdict. Specifically, Okie points to the prosecutor's statements that an insanity verdict requires a showing (1) of "public insanity," (2) that the defendant suffered hallucinations and delusions, and (3) that only the "worst of the worst" or "crazy of the crazy" are eligible for an insanity verdict. We review the denial of a requested jury instruction for prejudicial error. *Barretto*, 2008 ME 121, ¶ 9, 953 A.2d at 1140.

[¶ 16] The insanity statute provides:

### § 39. Insanity

1. A defendant is not criminally responsible by reason of insanity if, at the time of the criminal conduct, as a result of mental disease or defect, the defendant lacked substantial capacity to appreciate the wrongfulness of the criminal conduct.

2. As used in this section, "mental disease or defect" means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality. An abnormality manifested only by repeated criminal conduct or excessive use of alcohol, drugs or similar substances, in and of itself, does not constitute a mental disease or defect.

3. Lack of criminal responsibility by reason of insanity is an affirmative defense.

17–A M.R.S. § 39. Two of the prosecutor's statements—those referring to hallucinations and delusions, and to the "worst of the worst" or "crazy of the crazy"—are fair although colloquial comments on the principles endorsed in section 39. When viewing the closings as a whole, the function of these statements was to emphasize to the jury that the insanity verdict applies only to serious mental illness that compromises the ability to distinguish right from wrong, a concept fully consistent with that contemplated by section 39.

[¶ 17] Okie particularly challenges the prosecutor's closing reference to "public insanity." Because Okie's defense strategy was to persuade the jury that his type of mental illness went "underground," and thus that he did not exhibit any overt symptoms, Okie contends that the "public insanity" reference misled the jury to find that Okie was not insane because he did not exhibit such overt and obvious symptoms.

[¶ 18] The prosecutor's single reference to "public insanity," however, must be considered within the context of the remainder of the statements made by the prosecutor in her closing arguments, Okie's closing arguments, the jury instructions given by the court, and the relevant testimony given on this issue. During the State's closing argument, the prosecutor also stated, in accordance with section 39, that:

the defendant has to prove by a preponderance of the evidence that a defendant

---

version of the insanity verdict statute in use at the time *Condon* was decided does not differ in significant measure from the current version of the insanity verdict statute such that

revision of our prior holdings is necessary on this basis. *Compare* 15 M.R.S.A. §§ 103, 104–A (1980 & Supp.1981), *with* 15 M.R.S. §§ 103, 104–A (2009).

is not criminally responsible by reason of insanity if at the time of the criminal conduct, and here are some magic words, as a result of a mental disease or defect the defendant lacked substantial capacity to appreciate the wrongfulness of the criminal conduct.

So what is it to have a mental disease or defect? A mental disease or defect is only those severe abnormal conditions that grossly, grossly, demonstrably, demonstrably, it can show, impair a person's perception or understanding of reality. That just doesn't exist in this case. It doesn't exist in this case.

. . . .

It has to exist at the time he killed Aleigh. It has to exist at the time he killed his dad. And most importantly, there has to be something about that psychosis that makes it so that he cannot appreciate—he does not have the substantial capacity to appreciate the wrongfulness of his conduct.

[¶ 19] In addition, the "public insanity" reference must be considered in light of the testimony of Dr. Charles Robinson, Okie's forensic psychology expert, and the testimony of the State's forensic expert, Dr. Ann LeBlanc. In fact, it was Dr. Robinson who initially employed the term "public insanity"; he testified that individuals whose symptoms are obvious to anyone witnessing their behavior are often described as publicly insane. In contrast, Dr. Robinson testified, there are those, like Okie, who suffer from gross forms of psychosis but do not manifest obvious symptoms of their psychoses. Dr. LeBlanc disagreed, testifying that it was implausible that someone could be as psychotic as Okie has alleged he was without manifesting symptoms of the psychosis to those closest to him. In short, Dr. Robinson testified that Okie was grossly psychotic but was not publicly insane because

he did not manifest symptoms of his insanity. Dr. LeBlanc testified, however, that it was impossible to be so grossly psychotic without manifesting symptoms, implying that Okie would have to have demonstrated the kind of "public insanity" referenced by Dr. Robinson if he had suffered from the type and severity of mental illness the insanity verdict was intended to address. Thus, presumably as a matter of trial strategy, the State was attempting to challenge Okie's insanity allegations by characterizing his mental illness using the distinctions provided by Okie's own expert witness.

[¶ 20] Finally, in Okie's closing argument, his counsel informed the jury that Okie's schizophrenia was substantial and demonstrable despite its covert nature; that, contrary to the State's reference in its closing, no psychotic symptoms necessarily had to be shown by Okie; and that Okie lacked the substantial capacity to appreciate the wrongfulness of killing Mills and his father. Indeed, Okie's counsel explicitly refuted the State's closing argument on this point, stating, "I'm sure [the attorney for the State] would agree that when she referenced the grossly and demonstrably requirement, that mental illness which is manifested grossly and demonstrably, she didn't mean somebody has to be public[ly] crazy." The court also instructed the jury that none of the statements of the attorneys themselves, including closing arguments, constitute evidence, and that the evidence for the jury's consideration was limited to those facts admitted at trial through testimony or exhibits.

[¶ 21] In this context, we discern no error in the court's denial of Okie's requested curative instructions. Although using the phrase "public insanity" in an effort to make the very complicated principles of legal insanity understandable to jurors was imprecise, our review of the

trial record as a whole reveals that the jury was adequately and properly informed of the law applicable to an insanity verdict.

## C.  Sentence Appeal

■ [¶ 22] Finally, Okie challenges the sentence imposed by the court. He argues that the court erred in failing to adequately consider the mitigating factors, and that the court improperly imposed consecutive, rather than concurrent, sentences. We disagree. Our review of the record indicates that the trial court afforded detailed consideration to both the aggravating factors affecting Okie's sentence—the significant impact on the victims' families, including Okie's mother, who suffered the loss of her husband at the hands of her son—as well as the mitigating factors relevant to Okie's sentencing—Okie's mental illness, youth, and lack of significant criminal history. *See* 17–A M.R.S. § 1252–C(2) (2009); *State v. Cookson,* 2003 ME 136, ¶ 38, 837 A.2d 101, 112. In addition, the court appropriately considered the relevant factors for imposing consecutive rather than concurrent sentences, and specifically found that two of those factors applied to Okie and justified the imposition of consecutive sentences, namely, that Okie's conduct arose from different criminal episodes, and the seriousness of Okie's conduct in those multiple criminal episodes. *See* 17–A M.R.S. § 1256(2) (2009). The court neither exceeded its discretion nor erred in fashioning Okie's periods of incarceration. *See State v. Faulcon,* 2005 ME 119, ¶ 4, 887 A.2d 510, 511–12; *Cookson,* 2003 ME 136, ¶ 38, 837 A.2d at 112.

The entry is:

Judgment affirmed.