STATE of Maine

v.

**Doris Elizabeth KANE.**

Supreme Judicial Court of Maine.

Argued March 13, 1980.

Decided July 20, 1981.

Charles K. Leadbetter, Michael D. Seitzinger (orally), Augusta, Asst. Attys. Gen., for plaintiff.

Berman, LeBlanc, Pallas & Clark, Ray R. Pallas (orally), Westbrook, Robert M. Napolitano, Portland, for defendant.

Before GODFREY, NICHOLS, GLASS-MAN* and ROBERTS, JJ., and DU-FRESNE, A.R.J.

NICHOLS, Justice.

The Defendant, Doris Elizabeth Kane, was convicted of murder, 17–A M.R.S.A. § 201, in Superior Court in Kennebec County. From that judgment she has seasonably appealed to this Court, claiming error by the trial court (1) in permitting prosecutorial comment upon her failure to give an exculpatory explanation while speaking spontaneously to a police officer before and after she was given *Miranda* warnings; and (2) in instructions which required the jury to find murder or manslaughter before it might consider self-defense.

We affirm the judgment of conviction.

The Defendant, Doris Elizabeth Kane, was the wife of the victim of this homicide, Stanley Kane. When on February 20, 1979, the Defendant and her husband became embroiled in an argument inside their trailer-home in Winthrop, the Defendant shot him with a shotgun, and he died at the scene. The Defendant was thereafter indicted for both murder and manslaughter. Although at trial the Defendant testified that she shot her husband in self-defense, the jury convicted her of murder.

I

■ Defendant contends that at trial the prosecutrix violated her Fifth Amendment rights in her argument to the jury in which she commented upon omissions in the Defendant's statements on the date of the shooting. She argues that those omissions represent her silence attributable to her exercise of her right against self-incrimination, and that *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), prohibits impeachment, and therefore prosecutorial comment, upon such silence.

At trial, police officer Daniel McGinley testified that on February 20, 1979, he arrived at the Kanes' trailer in response to a

radio call, and when he entered the trailer to find Stanley Kane dead on the floor, the Defendant was crying uncontrollably. Officer McGinley testified that she said spontaneously to him, "We had a hell of a fight and I got the gun and shot him." Officer McGinley helped the Defendant to the kitchen table and talked with her for about 30 minutes. He did not put the Defendant under arrest or ask her questions about the shooting, but rather, he said, he tried to steer the conversation to other subjects. Though Officer McGinley did not testify to the exact warning given, he testified that several times he told the Defendant she had a right to remain silent and to get a lawyer. Nevertheless, he testified, the Defendant related that she and her husband had been arguing about their checkbook. When Officer McGinley again warned her not to speak, he testified that she thereupon said to him, "[D]ammit, he threw a damn tray at me, and I shot him."

State Police Detective Richard Cook testified at trial that when he arrived, he inquired whether the victim had been identified. The Defendant said, "[T]hat is my husband. How am I ever going to explain this to his sister." Cook then gave her "the *Miranda* warning." The Defendant later said, "[Y]ou will have to call his sister and let them know what I've done."

At the Winthrop police headquarters Detective Cook told the Defendant she was under arrest. Cook asked her if she had any scars or marks or if she was injured. The Defendant reported scars from previous operations and indicated she was not injured.

The police officers testified that the Defendant did not state at any time that she had been afraid of her husband or that he had ever assaulted her.

When the Defendant took the stand she testified that she shot the Defendant in self-defense. She testified she feared him because on previous occasions he had as-

---

* GLASSMAN, J., sat at oral argument and participated in the initial conference but died before the opinion was adopted.

saulted her seven or eight times while he was drunk, and two weeks before he had threatened her with a knife. The Defendant explained why she did not tell the police these facts relevant to self-defense in response to a question on direct examination. Defense counsel asked her whether she told the police about her husband's prior attacks. She answered, "No, I tried to tell them but they kept telling me to be quiet and not to talk."

Before final argument, defense counsel moved to prohibit the prosecutrix from commenting on the Defendant's failure to tell the police about the prior violence and her fear. Defense counsel characterized the omission as an exercise of her Fifth Amendment right to remain silent. Nevertheless, the Superior Court allowed the prosecutrix to comment, finding that it was fairly arguable whether the omissions resulted because the police discouraged her from speaking or because there were in fact no exculpatory circumstances.

In his summation the prosecutrix interpreted Stanley Kane's rage as provoked by the Defendant's nagging. On the basis of the Defendant's demeanor on the night of the incident, her comments, and her failure to relate exculpatory facts on the night of the incident, the prosecutrix argued that the Defendant did not shoot in self-defense.

■ In this trial the prosecutrix did not penalize the Defendant for exercising her Fifth Amendment rights because the Defendant never asserted those rights. Once a defendant decides to speak, her failure to speak in exculpation cannot be explained away as a response to *Miranda* warnings. A defendant making inculpatory statements would not meanwhile withhold exculpatory facts in exercise of her right against self-incrimination. *Hill v. United States,* 404 A.2d 525, 531 (D.C.App.1979) *cert. denied,* 444 U.S. 1085, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980); *Simmons v. Zahradnick,* 465 F.Supp. 115, 117–118 (E.D.Va. 1979).

Given the posture of the evidence in the case before us, we conclude that the rule of *Doyle v. Ohio, supra,* avails the Defendant nothing. The prosecutor was free to comment upon and argue other explanations for the omissions in the Defendant's statements.

The Defendant not only failed to assert her right to remain silent, but she also affirmatively waived that right by volunteering certain statements to the officer. This waiver permitted the prosecutrix to comment upon the statements she then volunteered. Significantly, in this trial the prosecutrix did not comment to the jury upon the Defendant's silence but upon inferences from the statements which of her own volition she had made. *United States v. Goldman,* 563 F.2d 501, 503–504 (1st Cir. 1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 768 (1978); *United States v. Lorenzo,* 570 F.2d 294, 297–98 (9th Cir. 1978). As the United States Court of Appeals for the First Circuit declared in *Vitali v. United States,* 383 F.2d 121, 123 (1st Cir. 1967):

A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to. This was not a case where the government commented upon . . . a prior exercise of rights. The government asked the jury to measure what the defendant said when he had no rights because he had voluntarily waived them.

The prosecutrix here was properly observing that what the Defendant did say lacked elements the jury would expect to find in an innocent person's statements about the incident.

## II

■ The Defendant's second challenge to her conviction focuses upon the court's instructions to the jury that they had to find that the Defendant had committed murder or manslaughter before they could consider whether she had acted in self-defense. The court several times instructed the jury in language similar to the following segment of the charge:

If you conclude that murder has been established or manslaughter has been established, then, and only then would you have the occasion to consider [whether what would otherwise] be an unlawful

killing of a human being is nevertheless justified by self-defense. So it is important to remember analytically your concern and your enquirey [sic] into self-defense arises only after you have concluded there has been sufficient factual ways to support murder or manslaughter.

The Defendant argues that a person who kills justifiably, or in self-defense, is not guilty of the crime charged. By referring to "murder" to indicate "a killing which would be murder if unjustified," she contends, the court was emphasizing a verdict of guilty.[1]

At several points in its charge, however, the court stressed to the jury that the State has the burden of disproving a defense of justification. The court also reiterated that a defendant who kills in self-defense is not guilty. Therefore, in accordance with the rule that we must review jury instructions as a whole, *State v. Foster*, Me., 405 A.2d 726, 730 (1979), we find that the asserted defect in the court's charge on self-defense was not reversible error.

The entry will be:

Appeal denied.

Judgment affirmed.

All concurring.

---

1. We would caution trial judges against instructing the jury that they must find guilt before considering justification. The risk entailed in such language is that a jury may conclude that the defendant has the burden of proving justification once the State proves facts which without justification would constitute a crime.