COMMONWEALTH *vs.* WILLIAM ALLEN.

No. 08-P-2112.

Suffolk. October 6, 2009. - December 14, 2009.

Present: LENK, GREEN, & TRAINOR, JJ.

*Assault by Means of a Dangerous Weapon. Self-Defense. Practice, Criminal,* Instructions to jury. *Words,* "Dangerous weapon."

At the trial of a criminal complaint charging, among other things, assault by means of a dangerous weapon, the defendant was not entitled to a jury instruction on the use of nondeadly force in self-defense, where the evidence did not give rise to a question of fact whether the defendant's use of a folding knife constituted the use of nondeadly force, given that the victim's testimony was uncontroverted that the defendant tried to "hit" the victim with the unfolded knife. [10-13]

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on February 21, 2008.

The case was tried before *Annette Forde,* J.

*Kathryn Karczewska Ohren* for the defendant.

*Zachary Hillman,* Assistant District Attorney, for the Commonwealth.

GREEN, J. Martino Scovacricchi kept his saxophone in a distinctive bright red case. Around midday on February 20, 2008, he was greatly dismayed to discover both case and instrument missing from the locker at the Huntington Avenue YMCA in Boston, where he had placed them for storage while he went for a swim.[1] Scovacricchi made inquiry to the YMCA staff, to no avail, and reported the theft to Boston police. He also alerted a

---

[1]Scovacricchi purchased the saxophone for about four thousand euros eleven or twelve years earlier and brought it with him from his native Italy in September, 2007, when he came to study at Berklee College of Music. Scovacricchi had owned the red case only since late January, 2008, but he had already personalized it by adding straps from a cello case, and applying stickers to its side.

nearby music store to be on the lookout if anyone came in seeking to sell a saxophone in a red case, and he took preliminary steps to borrow another instrument for use in a recording session the following day.

As the afternoon progressed, Scovacricchi called friends and family members to lament his loss, and made arrangements with a friend to go out to dinner. As the pair passed Symphony Hall on their way to the restaurant, Scovacricchi's companion directed his attention to the defendant, who was waiting at a bus stop with Scovacricchi's bright red case hanging from his shoulder. Scovacricchi confronted the defendant and informed him that the saxophone was his. In response, the defendant asserted that he had purchased the saxophone earlier that day. Scovacricchi grabbed the handle of the red case, and a tugging match ensued. Two occurrences combined to end the scuffle. First, the defendant slowly pulled a folded knife from his pocket, unfolded it, and moved it in Scovacricchi's direction, in an attempt to hit the hand with which Scovacricchi grasped the handle to the saxophone case; that act led Scovacricchi to relinquish his grasp. A few moments later, police officers from a paid detail at Symphony Hall arrived on the scene and placed the defendant under arrest.

The defendant was tried before a jury in the Boston Municipal Court, and was convicted on a charge of assault by means of a dangerous weapon, in violation of G. L. c. 265, § 15B.[2] The defendant's appeal presents the question whether the defendant was entitled to a jury instruction on the use of nondeadly force in self-defense.[3]

"[A] self-defense instruction must be given when deadly force was used only if the evidence, viewed in the light most favorable to the defendant, permits at least a reasonable doubt

---

[2]The jury acquitted the defendant on a charge of receiving stolen property, in violation of G. L. c. 266, § 60. Prior to trial, a third charge of possession of a class D substance was dismissed at the Commonwealth's request.

[3]We agree with the Commonwealth that the defendant was not entitled to an instruction on self-defense by means of deadly force, because the evidence establishes that the defendant could not reasonably have believed himself to be in imminent danger of death or serious bodily injury at the hand of his unarmed, albeit larger, assailant. See *Commonwealth* v. *Ramos*, 66 Mass. App. Ct. 548, 554-555 (2006). This, however, is not dispositive of the case since the defendant's claim of error flows from the premise that he was entitled to instruction on the use of nondeadly force in self-defense. It is therefore immaterial if the judge's instruction on the use of deadly force was warranted, or

that the defendant reasonably and actually believed that he was in 'imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force.' " *Commonwealth* v. *Pike*, 428 Mass. 393, 396 (1998), quoting from *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). "Where the level of force cannot be determined as a matter of law, . . . instructions on both the use of deadly force and nondeadly force must be given." *Commonwealth* v. *Walker*, 443 Mass. 213, 217 (2005). The defendant argues that the evidence in the present case raised a question of fact, to be resolved by the jury, whether the defendant's use of the knife constituted the use of deadly or nondeadly force. Accordingly, the defendant claims error in the form of the judge's instruction on self-defense which, the defendant contends, limited the jury's consideration to whether the defendant was justified to use deadly force in self-defense.[4]

As a threshold matter, we observe that "[w]hether force is deadly or nondeadly is determined by whether a dangerous weapon was used." *Commonwealth* v. *Tirado*, 65 Mass. App. Ct. 571, 575 (2006). See *Commonwealth* v. *Toon*, 55 Mass. App. Ct. 642, 644 n.3 (2002), citing *Commonwealth* v. *Klein*, 372 Mass. 823, 827 (1977) ("What constitutes deadly force tracks the longstand-

---

was instead a benefit to which the defendant was not entitled. See *Commonwealth* v. *Alves*, 50 Mass. App. Ct. 796, 809-810 (2001).

Our view of the case does, however, obviate any need to consider the Commonwealth's contention that the defendant was not entitled to instruction on self-defense, for the separate reason that the encounter occurred on a public street and the defendant did not avail himself of reasonable avenues of escape. See *Commonwealth* v. *Berry*, 431 Mass. 326, 335 (2000). In response, the defendant contends that he was suddenly attacked by an assailant larger than himself, and had no realistic opportunity to escape.

[4]The trial judge instructed the jury on self-defense. As administered by the judge, however, the instruction initially advised the jury that they could consider self-defense only if the defendant reasonably believed himself to be "in immediate danger of being killed or seriously injured." A later description by the judge of the defense of self-defense omitted the reference to death or serious injury as a predicate to the permissible use of force, but the defendant argues that the subsequent version was inadequate to undo the damage caused by the first version. Because the defendant did not object to the instruction as administered, we review the claim for a substantial risk of a miscarriage of justice. However, "[s]elf-defense is a sensitive part of the jury instructions in a criminal trial, and inappropriate language in the instructions can readily lead to a result in which an appellate court lacks confidence." *Commonwealth* v. *Mejia*, 407 Mass. 493, 497 (1990).

ing definition of a 'dangerous weapon,' an instrument that, as used, is likely to cause death or serious bodily injury").

Whether an instrument which is not dangerous per se, but which may be used in a dangerous manner, constitutes a dangerous weapon in the circumstances of a particular case is ordinarily a question of fact. See *Commonwealth* v. *Appleby*, 380 Mass. 296, 304 (1980).[5] Similarly, when a dangerous weapon is not used in its intended manner, such as when a gun is "brandished but not fired, the jury must determine whether the defendant intended to use the weapon in a deadly manner." *Commonwealth* v. *Cataldo*, 423 Mass. 318, 322 (1996).[6]

Emphasizing the question of intent as one of fact, the defendant contends that he merely brandished the knife, and the question whether he intended to use it in a deadly manner should have been submitted to the jury.[7] But see *Commonwealth* v. *Vickers*, 60 Mass. App. Ct. 24, 29 (2003) (instruction on self-defense unwarranted when defendant "brandished" box cutter in response to nondeadly attack). To the contrary, the evidence at trial raised no such question. In assessing the defendant's claim of self-defense, we are obliged to draw all inferences, and to resolve all evidentiary conflicts, in the defendant's favor. We

---

[5]The trial judge did not submit to the jury the question whether the knife in the present case was a dangerous weapon, instead simply explaining that, for purposes of the charge of assault by means of a dangerous weapon, the dangerous weapon was a knife. The defendant claims no error in the instruction on this point, and does not argue that the knife was not a dangerous weapon. In any event, such a claim would afford the defendant no relief. Unlike straight knives, folding knives typically are not regarded as dangerous weapons, at least while unopened. See *Commonwealth* v. *Miller*, 22 Mass. App. Ct. 694, 696-697 (1986); *Commonwealth* v. *Turner*, 59 Mass. App. Ct. 825, 828-829 (2003). In the present case, however, the defendant opened the knife before trying to hit Scovacricchi's hand with it. When open, the knife is ten inches long, with a four-inch blade held in place by a locking mechanism. See *Commonwealth* v. *Miller, supra.* Accordingly, in the circumstances of the present case whether the knife was a dangerous weapon presents no genuine question of fact.

[6]To similar effect is *Commonwealth* v. *Hubbard*, 45 Mass. App. Ct. 277, 282 (1998) (question whether defendant holding uncocked and unloaded rifle at "port arms" — that is, with barrel pointed up into the air — intended to use it in deadly manner was question of fact for jury).

[7]We note that specific intent to inflict serious injury is not required to support a conclusion that a defendant has employed deadly force; it is enough that the defendant's intentional act was "likely to cause death or great bodily harm." *Commonwealth* v. *Klein*, 372 Mass. at 827.

are not, however, obliged to disregard uncontroverted testimony. See *Commonwealth* v. *Williams*, 53 Mass. App. Ct. 719, 721-722 (2002). In the present case, the defendant did not testify. Scovacricchi's uncontroverted testimony was that the defendant "tried to hit" Scovacricchi with a ten-inch-long folding knife after opening it. Though the testimony does not describe the precise nature of the defendant's motion, the defendant's attempt to hit Scovacricchi with the knife, had it been successful, would have caused serious injury. Accordingly, the attempt constituted the use of deadly force, which was unjustified in response to an unarmed attack. Since the defendant was not entitled to instruction on self-defense, any error in the instruction that the judge administered could not give rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Toon*, *supra* at 644, and cases cited.

*Judgment affirmed.*