2012 ME 11

**STATE of Maine**

v.

**Kenny L. OUELLETTE.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2011.
Decided: Jan. 31, 2012.

---

Theodore M. Smith, Esq. (orally), Smith Law Office, LLC, Van Buren, for appellant Kenny L. Ouellette.

John M. Pluto, Asst. Dist. Atty., Prosecutorial District No. 8, Caribou, for appellee State of Maine.

Todd Collins, District Attorney (orally), for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Kenny L. Ouellette appeals from a judgment of conviction for reckless conduct (Class D), 17–A M.R.S. § 211(1) (2011), entered in the Superior Court (Aroostook County, *Hunter, J.*) on a jury verdict. Ouellette argues that the court erred in declining to instruct the jury on his justification of self-defense to that charge, and in failing to inform the jury of the parties' out-of-court resolution that resulted in a dismissal of a count of criminal

mischief (Class D), 17–A M.R.S. § 806(1)(A) (2011), stemming from the same incident. We vacate the judgment.

## I. BACKGROUND

[¶ 2] In 2010 Ouellette was charged with assault (Class D), 17–A M.R.S. § 207(1)(A) (2011); reckless conduct (Class D), 17–A M.R.S. § 211(1); and criminal mischief (Class D), 17–A M.R.S. § 806(1)(A), stemming from an altercation with victim Mike Nadeau. Ouellette pleaded not guilty to all counts. Prior to trial, the court dismissed the criminal mischief charge pursuant to 15 M.R.S. § 891(1) (2011) because Ouellette and Nadeau had reached an accord and satisfaction.

[¶ 3] During his jury trial, Ouellette asserted that he acted only in self-defense, and requested a jury instruction to that effect for both the assault and reckless conduct charges. Viewing the evidence of the crimes in the light most favorable to the State, *see State v. Severy*, 2010 ME 126, ¶ 3, 8 A.3d 715, and the evidence supporting the claim of self-defense in the light most favorable to Ouellette, *see State v. Barretto*, 2008 ME 121, ¶ 4, 953 A.2d 1138, the following facts were established at trial.

[¶ 4] On the evening of April 4, 2010, in Caribou, victim Mike Nadeau learned that Ouellette was "riding around" with a fifteen-year-old girl. Nadeau, who was driving around town with a male friend at the time, was upset that Ouellette was with the girl. Both Nadeau and his passenger sent text messages to the girl to express their anger, and Nadeau eventually called the girl's cell phone and had a conversation with Ouellette during which Nadeau told Ouellette that he was "going to come find" him and "kick [his] ass." After this conversation, Ouellette brought the girl to her home and started driving with plans to leave Caribou; within a few minutes, Nadeau's vehicle crossed Ouellette's path. Nadeau followed Ouellette "right on [his] bumper," and Nadeau and his passenger made obscene gestures toward him. When both vehicles stopped for a red light, Nadeau and his passenger jumped out of their vehicle and approached Ouellette's vehicle. Ouellette testified: "I felt scared and threatened because they were two guys against one coming to jump me. They had already made threats to me over the phone." Neither Nadeau nor his passenger carried any weapons, but Ouellette left his vehicle with a baseball bat. Ouellette chased Nadeau with the bat and hit Nadeau on his wrist, swung the bat a few times without making contact with anything, used the bat to bash the taillight on Nadeau's truck, and then returned to his vehicle and drove away. After Ouellette got back in his truck, Nadeau chased Ouellette in his vehicle. A short while later, Ouellette reported the incident to a police officer and stated that he had acted in self-defense.

[¶ 5] Although the court granted Ouellette's request for a self-defense instruction as to the assault charge, it reasoned that the justification of self-defense was not applicable to a charge of reckless conduct. Ouellette also requested an instruction informing the jury about the out-of-court accord and satisfaction; the court denied this request as well, based on its determination that the accord and satisfaction was not relevant.

[¶ 6] The jury found Ouellette guilty of reckless conduct, but not guilty of assault. The court entered a judgment on the verdict and sentenced Ouellette to thirty days in jail, all suspended; one year of administrative release; and a $500 fine. Ouellette appeals.

## II. DISCUSSION

[¶ 7] Ouellette contends that the court erred in declining to instruct the

jurors that they could consider the justification of self-defense for the reckless conduct count, and in declining to instruct the jurors about the dismissal of the criminal mischief charge. We review the denial of a requested jury instruction for prejudicial error, and will vacate a judgment on this basis only when the denied instruction "(1) stated the law correctly; (2) was generated by the evidence in the case; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave." *Barretto*, 2008 ME 121, ¶ 9, 953 A.2d 1138 (quotation marks omitted).

## A. Self–Defense

 [¶ 8] We have recently enumerated the three broad categories of criminal defenses—a failure of the State's proof, an affirmative defense, and a justification or excuse—that differ primarily based on the allocation of the parties' respective burdens. *State v. LaVallee–Davidson*, 2011 ME 96, ¶¶ 12–14, 26 A.3d 828. In asserting a failure of the State's proof, the defendant argues that the State has not established one or more elements of the crime beyond a reasonable doubt, but the defendant himself has no burden. *Id.* ¶ 12; *see* 17–A M.R.S. § 101(1) (2011). An affirmative defense, in contrast, places the burden of persuasion on the defendant to establish certain facts by a preponderance of the evidence. *LaVallee–Davidson*, 2011 ME 96, ¶ 14, 26 A.3d 828; *see* 17–A M.R.S. § 101(2) (2011). Finally, a justification places on the defendant a burden of production to generate an issue with sufficient evidence, and then imposes on the State the burden of persuasion to disprove the defense. *LaVallee–Davidson*, 2011 ME 96, ¶ 13, 26 A.3d 828; *see* 17–A M.R.S. § 101(3) (2011); *State v. Millett*, 273 A.2d 504, 508 (Me.1971).

 [¶ 9] Self-defense is one type of the third category of criminal defenses, justifications; it details the circumstances in which a person may use force to defend himself or a third person against an aggressor.[1] 17–A M.R.S. § 108 (2011). Like

---

1. Title 17–A M.R.S. § 108 (2011) provides in its entirety:

§ 108. **Physical force in defense of a person**

1. A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend the person or a 3rd person from what the person reasonably believes to be the imminent use of unlawful, nondeadly force by such other person, and the person may use a degree of such force that the person reasonably believes to be necessary for such purpose. However, such force is not justifiable if:

A. With a purpose to cause physical harm to another person, the person provoked the use of unlawful, nondeadly force by such other person; or

B. The person was the initial aggressor, unless after such aggression the person withdraws from the encounter and effectively communicates to such other person the intent to do so, but the other person notwithstanding continues the use or threat of unlawful, nondeadly force; or

C. The force involved was the product of a combat by agreement not authorized by law.

1–A. A person is not justified in using nondeadly force against another person who that person knows or reasonably should know is a law enforcement officer attempting to effect an arrest or detention, regardless of whether the arrest or detention is legal. A person is justified in using the degree of nondeadly force the person reasonably believes is necessary to defend the person or a 3rd person against a law enforcement officer who, in effecting an arrest or detention, uses nondeadly force not justified under section 107, subsection 1.

2. A person is justified in using deadly force upon another person:

A. When the person reasonably believes it necessary and reasonably believes such other person is:

(1) About to use unlawful, deadly force against the person or a 3rd person; or

other justifications, self-defense "represents a legal acknowledgement that the harm caused by otherwise criminal conduct is, under special justifying circumstances, outweighed by the need to avoid an even greater harm or to further a greater societal interest." *State v. Singleton,* 292 Conn. 734, 974 A.2d 679, 689 (2009) (quotation marks omitted). "[T]he law relating to self-defense is designed to afford protection to one beset by an aggressor and confronted by necessity not of his own making."[2] *State v. Case,* 672 A.2d 586, 589 (Me.1996); *Millett,* 273 A.2d at 509. Self-defense, like other justifications, is a complete defense, meaning that it negates the commission of the crime; an act committed in self-defense is "simply no crime at all." *Singleton,* 974 A.2d at 690; *see* 17–A M.R.S. § 101(3); *State v. Kane,* 432 A.2d 442, 445 (Me.1981) ("[A] defendant who kills in self-defense is not guilty.").

[¶ 10] Section 108 provides for two possible self-defense justifications depending on whether the defendant uses deadly or nondeadly force. Deadly force is "physical force that a person uses with the intent of causing, or that a person knows to create a substantial risk of causing, death or serious bodily injury." 17–A M.R.S. § 2(8) (2011). A defendant's use of deadly force is justified only when: (1) the defendant has an actual belief that a person is about to use unlawful deadly force against him or another person; a person is committing or about to commit a kidnapping, robbery, or gross sexual assault; or a person has entered or is attempting to enter or remain in a dwelling place without permission and use of deadly force is necessary to prevent bodily injury to himself or another in the dwelling; (2) the defendant believes the use of such force is necessary; (3) those beliefs are objectively reasonable; (4) the defendant did not provoke the attack or does not know that the third person he is protecting provoked the attack; and (5) the defendant knows that he or the third person cannot, "with complete safety," "[r]etreat from the encounter" (with exceptions), "[s]urrender property to a person asserting a colorable claim of right" to it, or "[c]omply with a demand" from the attacker to "abstain from performing an

---

**(2)** Committing or about to commit a kidnapping, robbery or a violation of section 253, subsection 1, paragraph A, against the person or a 3rd person; or
**B.** When the person reasonably believes:
**(1)** That such other person has entered or is attempting to enter a dwelling place or has surreptitiously remained within a dwelling place without a license or privilege to do so; and
**(2)** That deadly force is necessary to prevent the infliction of bodily injury by such other person upon the person or a 3rd person present in the dwelling place;
**C.** However, a person is not justified in using deadly force as provided in paragraph A if:
**(1)** With the intent to cause physical harm to another, the person provokes such other person to use unlawful deadly force against anyone;
**(2)** The person knows that the person against whom the unlawful deadly force is directed intentionally and unlawfully provoked the use of such force; or
**(3)** The person knows that the person or a 3rd person can, with complete safety:
**(a)** Retreat from the encounter, except that the person or the 3rd person is not required to retreat if the person or the 3rd person is in the person's dwelling place and was not the initial aggressor;
**(b)** Surrender property to a person asserting a colorable claim of right thereto; or
**(c)** Comply with a demand that the person abstain from performing an act that the person is not obliged to perform.

**2.** Self-defense is defensive, not retaliatory: "You may prevent an injury from being done by all proper means, but, when done, you cannot take redress into your own hands." *State v. Allen,* 235 A.2d 529, 532 (Me.1967) (quotation marks omitted).

act that the [defendant] is not obliged to perform" 17–A M.R.S. § 108(2).

[¶ 11] Nondeadly force is "any physical force which is not deadly force." 17–A M.R.S. § 2(18) (2011). A defendant's use of nondeadly force is justified when: (1) the defendant has an actual belief that imminent and unlawful nondeadly force is about to be used against him or a third person; (2) that belief is objectively reasonable; (3) the defendant has an actual belief that force is necessary to defend himself or the third person; (4) that belief is also objectively reasonable; (5) the defendant uses only a "reasonable degree of nondeadly force" to repel the attack; (6) the defendant did not provoke the other person's use of force; (7) the defendant was not the "initial aggressor" or, if he was, he "withdraws from the encounter and effectively communicates to such other person the intent to do so"; (8) the force is not "the product of a combat by agreement not authorized by law"; and (9) the defendant does not know and reasonably should not know that the person using force against him is a law enforcement officer effectuating an arrest or detention, unless he reasonably believes the officer is using unjustified nondeadly force. 17–A M.R.S. § 108(1), (1–A).

[¶ 12] Whenever a jury instruction regarding self-defense is requested, the trial court must consider two interrelated questions. The court must determine whether self-defense is in issue at all and, as it does so, the court will also need to consider whether deadly or non-deadly force is implicated.

[¶ 13] To make its decision, the court determines whether sufficient evidence has been generated that is "of such nature and quality" to render "the existence of all facts constituting the defense a reasonable hypothesis for the fact finder to entertain." *Barretto*, 2008 ME 121, ¶ 4, 953 A.2d 1138 (quotation marks omitted);

*see also State v. Graham*, 2004 ME 34, ¶ 12, 845 A.2d 558; *State v. Philbrick*, 481 A.2d 488, 492 (Me.1984). The trial court thus considers whether there is some evidence to support each element of one form of self-defense, and which instruction—deadly or nondeadly—is generated by that evidence. In doing so, the trial court must view the facts in the light most favorable to the defendant and resolve all reasonable inferences in the defendant's favor. *State v. Michaud*, 1998 ME 251, ¶¶ 16–17, 724 A.2d 1222 ("[T]he court should have suspended its disbelief and assumed that [the defendant's] story was true.").

[¶ 14] All of the facts underlying self-defense—including the defendant's actual beliefs, the reasonableness of those beliefs, and the reasonableness of the force used in response—must ultimately be decided by the jury. *State v. Bard*, 2002 ME 49, ¶ 16, 793 A.2d 509; *see Lamont v. State*, 934 P.2d 774, 777 (Alaska Ct.App. 1997) ("The court must be mindful of the need to refrain from adjudicating factual issues that fall within the jury's domain" or else the court may risk "encroaching on the prerogative of the jury and, to that extent, impinging on the right of the accused to a jury trial." (quotation marks omitted)). Thus, the court's determination at this stage is limited to whether a rational jury *could* find self-defense on the evidence admitted. *See State v. Kaler*, 1997 ME 62, ¶ 11, 691 A.2d 1226 ("Merely because there is evidence sufficient to generate an issue of self-defense does not mean the jury is compelled to believe that evidence." (alterations omitted) (quotation marks omitted)); *State v. Lagasse*, 410 A.2d 537, 543 (Me.1980).

[¶ 15] In many, if not most, instances, the trial court may determine, as a matter of law, whether there is evidence that could support a self-defense finding and if so, whether deadly or non-

deadly force is implicated. *See Barretto*, 2008 ME 121, ¶ 11, 953 A.2d 1138 ("In most cases the jury will not need to address the nature of the force. The nature of the force may be relevant to the court in deciding what instruction is appropriate." (quotation marks omitted)); *State v. Forbes*, 2003 ME 106, ¶¶ 15–16, 830 A.2d 417 (affirming the trial court's conclusion that the victim's contingent future threat to the defendant did not generate a self-defense instruction as a matter of law); *State v. Rainey*, 580 A.2d 682, 685 (Me. 1990) (holding that the defendant's actions could not be justified by self-defense given the undisputed evidence that he was the aggressor, entered the victim's property illegally, and had both the duty and opportunity to retreat safely); *State v. Glassman*, 2001 ME 91, ¶¶ 1, 11, 772 A.2d 863 (in a case involving a charge of criminal threatening with a dangerous weapon, noting that "a threat to use deadly force is the equivalent of nondeadly force" as a matter of law (alterations omitted) (quotation marks omitted)). If the trial court determines that the defendant has presented insufficient evidence to support either self-defense justification as a matter of law, the court will properly deny the requested instruction. *See, e.g., Millett*, 273 A.2d at 508 ("If the evidence adduced . . . is legally insufficient to raise the issue, the trial court will have no occasion or obligation to instruct the jury on the elements essential to a valid claim of self-defense, but rather will remove the issue of self-defense from jury consideration."). If the court determines that one type of self-defense is generated as a matter of law, the court's jury instructions must contain an explanation of that form of self-defense. *Cruz v. State*, 971 So.2d 178, 182 (Fla.Dist.Ct.App.2007).

■ [¶ 16] In some instances, however, the issue of self-defense is generated by the evidence, but determining whether the defendant used deadly or nondeadly force depends on a finding of fact, such as when the defendant's actions or use of a weapon could be seen as either deadly or nondeadly. *See Barretto*, 2008 ME 121, ¶ 13, 953 A.2d 1138 ("[T]he undisputed evidence demonstrates that Barretto intended to use the knife to injure the victim and that he actually stabbed the victim in the shoulder and the hand."); *State v. Crocker*, 506 A.2d 209, 210–11 (Me.1986) (evaluating the use of a baseball bat in a confrontation between individuals in which one witness testified that the aggressor "held the bat low and did not threaten [anyone] with it" and two others testified that the aggressor did swing the bat); *Commonwealth v. Walker*, 443 Mass. 213, 820 N.E.2d 195, 200 (2005) (discussing that whether a wrestling headlock constitutes deadly or nondeadly force is a question of fact for the jury). When the court is unable to determine whether the defendant used deadly or nondeadly force as a matter of law, the court must instruct the jury as to both and allow the jury to make the preliminary determination of whether the defendant used deadly or nondeadly force. *See Commonwealth v. Allen*, 76 Mass.App.Ct. 9, 918 N.E.2d 92, 94 (2009); *Walker*, 820 N.E.2d at 200; *Cruz*, 971 So.2d at 182; *Grimsley v. State*, 939 So.2d 123, 124 (Fla. Dist.Ct.App.2006); 6 Am.Jur.2d *Assault and Battery* § 80 (West Group, LEXIS 2011). This method preserves the defendant's fundamental right to a jury trial given that "[w]eighing the evidence is the sole prerogative of the jury and the trial court should decide whether to give an instruction without weighing the evidence." *Cruz*, 971 So.2d at 182; *see Lamont*, 934 P.2d at 777.

■ [¶ 17] Once the level of force used by the defendant is determined, whether by the court as a matter of law or by the jury as a matter of fact, the jury then considers both the justification gener-

ated and the crime alleged.[3] It is the State's burden to both disprove self-defense beyond a reasonable doubt and prove each element of the crime charged beyond a reasonable doubt. *Graham*, 2004 ME 34, ¶ 12, 845 A.2d 558; *State v. Soule*, 2001 ME 42, ¶ 11, 767 A.2d 316; *State v. McMahan*, 2000 ME 200, ¶ 5, 761 A.2d 50. If the jury finds that the State disproved at least one element of self-defense, the jury may then convict the defendant if it also finds, beyond a reasonable doubt, that the defendant committed each element of the crime. *Bard*, 2002 ME 49, ¶ 16, 793 A.2d 509; *Singleton*, 974 A.2d at 688–89.

[¶ 18] On appeal, we again view the facts supporting self-defense in the light most favorable to the defendant, review any factual findings for clear error, and conduct a de novo review of the trial court's decisions of law. *State v. Thurston*, 2009 ME 41, ¶ 15, 969 A.2d 906; *Barretto*, 2008 ME 121, ¶¶ 4, 11, 953 A.2d 1138; *State v. Ricky G.*, 2000 ME 190, ¶ 5, 760 A.2d 1065.

[¶ 19] In light of the clarification above, we now consider whether self-defense is a possible justification for Ouellette's actions, and if so, whether the trial court properly instructed the jury on that justification.

[¶ 20] Based on its legal conclusion that a self-defense justification is not available for a crime that may be committed with mere recklessness, the court instructed the jury that it could not consider self-defense as to the charge of reckless conduct.[4] This ruling was erroneous; a defendant may seek a self-defense instruction pursuant to section 108 for any charge that includes an intentional, knowing, or reckless state of mind as one of its elements. *See Forbes*, 2003 ME 106, 117, 830 A.2d 417 (discussing self-defense for crimes "for which recklessness suffices" (quotation marks omitted)); *State v. Sullivan*, 1997 ME 71, ¶ 8, 695 A.2d 115 (stating that self-defense is available "for any crimes for which criminal negligence is not an element of the offense"); *State v. Davis*, 528 A.2d 1267, 1270 (Me.1987) (holding that when "a reckless state of mind suffices," a jury must be instructed on a generated justification). The crime of reckless conduct does include a reckless state of mind as an element, 17–A M.R.S. § 211(1); *see* 17–A M.R.S. § 35(3) (2011) (defining recklessness), and self-defense

---

3. If only nondeadly force self-defense is generated by the evidence, but the jurors find that the defendant used deadly force in protecting himself or another person, the jurors must be instructed not to consider self-defense as a justification for the defendant's actions. If the level of force the jurors find is consistent with the allowable defense, the jurors will then consider that defense.

4. The self-defense instruction the court gave as to the assault count was flawless. The court correctly determined, first, that Ouellette presented no evidence that Nadeau was about to use unlawful deadly force against him, and second, that Ouellette did generate sufficient evidence that Nadeau was about to use unlawful nondeadly force against him. *See State v. Barretto*, 2008 ME 121, ¶ 11, 953 A.2d 1138. Having made this determination, the court informed the jurors that they were to decide, as an issue of fact, whether Ouellette's use of the baseball bat represented deadly or nondeadly force. The court then instructed the jurors about how they should use their factual determination concerning the nature of the force used by Ouellette— either deadly or nondeadly—during the rest of their deliberations. Specifically, the court explained that if the jurors found that Ouellette's use of the baseball bat represented deadly force, his actions could not be justified by Nadeau's actions. If, however, they found that Ouellette's use of the baseball bat represented nondeadly force, Ouellette's self-defense claim *could* justify his acts, and the State then had the burden to establish the elements of the assault charge beyond a reasonable doubt, and also to negate, beyond a reasonable doubt, some element of Ouellette's self-defense justification. *See id.;* 17–A M.R.S. § 101(3) (2011).

may therefore be available to justify otherwise reckless conduct if generated by the evidence. *Singleton,* 974 A.2d at 694 (stating that "self-defense is a valid defense to crimes based on reckless conduct as well as intentional conduct" (alteration omitted) (quotation marks omitted)).

[¶ 21] The State argues that the court's error in concluding that self-defense is not available for reckless conduct was harmless because Ouellette used deadly, rather than nondeadly, force in wielding the baseball bat, but failed to generate any evidence supporting his use of deadly force in self-defense pursuant to section 108(2). *See* M.R.Crim. P. 52(a). We disagree. We have stated that "where self-defense is an issue essential to the defendant's case, the court's failure to instruct on self-defense pursuant to section 108 deprives the defendant of a fair trial and amounts to obvious error." *Bard,* 2002 ME 49, ¶ 11, 793 A.2d 509 (quotation marks omitted); *see Thurston,* 2009 ME 41, ¶ 9, 969 A.2d 906; *Sullivan,* 1997 ME 71, ¶ 6, 695 A.2d 115. This is particularly true when, as here, there are multiple charges stemming from the same single incident and the jury has received the instruction as to one of the charges: "When the charges stem from several moments of potentially criminal conduct, and the indictment does not identify the particular facts that induced the charges, a court should not refuse to instruct on self-defense when evidence of self-defense surrounding one of the events has been presented." *Bard,* 2002 ME 49, ¶ 13, 793 A.2d 509 (footnote omitted). An acquittal on one charge indicates that the jury did not believe all of the evidence the State presented, and because the indictment contains multiple charges from the same incident, it is impossible to discern which portion of the incident the jury deems determinative. *Id.; see Thurston,* 2009 ME 41, ¶ 10, 969 A.2d 906 ("We have held that if the complaint or indictment does not

identify the particular event leading to the charge, the court cannot refuse to instruct the jury on self-defense if any one of the events generates a self-defense instruction.").

[¶ 22] The failure to instruct on a justification is even more prejudicial when the jury acquits the defendant of the count for which the instruction was given. In *Soule,* for example, we held that the trial court erred by giving a self-defense instruction as to an assault count, but declining to give a competing harms justification as to an aggravated criminal trespass count. 2001 ME 42, ¶ 14, 767 A.2d 316. We concluded that the jury's acquittal of the defendant on the assault count indicated that "it was not highly probable that the [failure to give the justification] instruction did not affect the verdict." *Id.*

[¶ 23] Contrary to the State's contention, the jury could have found that Ouellette acted in justifiable nondeadly self-defense in acquitting him of assault. That the jury also could have found Ouellette not guilty of reckless conduct on the same basis means the failure to instruct accordingly was not harmless. We therefore vacate the judgment and remand for a new trial on this basis.

## B. Accord and Satisfaction

[¶ 24] We are not persuaded, however, by Ouellette's second argument—that the court erred in failing to instruct the jury that he and the victim reached an out-of-court accord and satisfaction that resulted in the court's dismissal of the criminal mischief count. A defendant's acts making amends after committing one crime are irrelevant as to whether that defendant committed another crime; the State need only establish each element of the crime at issue beyond

a reasonable doubt. *Michaud*, 1998 ME 251, ¶ 11, 724 A.2d 1222.

The entry is:

Judgment of conviction for reckless conduct vacated. Remanded for a new trial consistent with this opinion.