MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 114
Docket:        Was-14-436
Submitted
  On Briefs:   June 2, 2015
Decided:       August 18, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## STANLEY FLETCHER

JABAR, J.

[¶1]  Stanley Fletcher appeals from a judgment of conviction of domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2014), and assault (Class D), 17-A M.R.S. § 207(1)(A) (2014), entered by the trial court (*Romei, J.*) after a jury-waived trial.  Fletcher argues that the court erred in finding that the State presented sufficient evidence to disprove his self-defense justification beyond a reasonable doubt.  Discerning no error, we affirm.

## I.  BACKGROUND

[¶2]   In May 2014, Fletcher was charged with one count of domestic violence assault and one count of assault following an altercation with his ex-girlfriend, Anna Jean, and his stepdaughter, Michelle.  During his trial, Fletcher claimed that he had acted in self-defense.

[¶3]  Before the altercation that gave rise to the assault charges, Fletcher and Anna Jean were in a romantic relationship, which ended one or two weeks prior to the incident.  On the date of the incident, Anna Jean was staying with her friend Michelle.  Fletcher was formerly married to Michelle's mother.

[¶4]  Around 10:00 p.m. on December 13, 2013, Michelle and Anna Jean went to a bar in Lubec, where each consumed a couple of alcoholic beverages. Fletcher arrived at the bar shortly thereafter and became intoxicated.  Michelle and Anna Jean saw Fletcher and he saw them, but neither woman spoke with him.  The women left the bar around midnight, and Michelle drove the two back to her residence.  After "last call," a woman named Lydia offered to drive Fletcher's truck to bring him and several others to their homes.  Fletcher agreed and climbed into the front passenger seat.  Lydia drove Fletcher's truck to Michelle's house to drop off Michelle's next-door neighbor, who had also been drinking at the bar.

[¶5]  Michelle, who did not get along with Fletcher, saw Fletcher's truck pull into her driveway, opened her front door, and yelled at Fletcher to leave.  The truck remained in the driveway with its engine running, the front passenger door closed, and the front passenger window open.  Michelle approached the truck's passenger side, angrily yelling at Fletcher through his open window.  There was conflicting testimony at trial as to exactly what happened next.

[¶6]  Michelle's testimony supports the following sequence of events: Fletcher raised his hand as if he was going to strike her, and she swung at him once through the open window.  Fletcher then kicked Michelle in the face and she lost consciousness and fell backward, suffering a chipped tooth and a bruised nose.  At trial, Michelle was initially unable to remember whether Fletcher had opened the door to kick her or had put his foot through the open window.  She later admitted that the door had been opened, but she did not know by whom.  According to Anna Jean's testimony, the row continued to unfold as follows: After Michelle fell, Anna Jean approached the truck screaming obscenities and "begging" Fletcher to leave.  When Anna Jean reached the truck, Fletcher punched her once in the face, breaking her nose and one of her front teeth and causing her lips to be cut by her teeth.  Anna Jean responded by retrieving a can of mace and spraying it at Fletcher.  She denied otherwise attacking him.

[¶7]  Fletcher's evidence portrays Michelle and Anna Jean as the aggressors.  Lydia's testimony supports the following account:  When Michelle reached the truck, she opened the passenger door, jumped up on the running boards, and argued with Fletcher for several minutes before Anna Jean joined her.  "[T]he argument got more heated and fists started being thrown."  Michelle hit Fletcher, but he did not hit back or get out of the truck.  The women held Fletcher's hands down and hit him harder, and Anna Jean hit him in the face with an object.  Lydia

estimated that the women "wailed on" Fletcher for seven to ten minutes. At one point, she testified, Fletcher got a hand loose and punched the air.

[¶8] According to Fletcher's testimony, he fell asleep in the truck after leaving the bar and awoke in Michelle's driveway to Michelle punching him in the face. He then "got maced and took punches," but could not see who was punching him because of the mace. At trial, Fletcher was initially unable to remember striking Michelle or Anna Jean. He explained that he had been "drunk" and did not "remember very much what happened that night. . . . Just bits and pieces." He also denied striking the women, and testified that if he had, it was "by mistake just trying to defend myself."

[¶9] At some point, Michelle's next-door neighbor returned to the scene, pulled Fletcher out of the truck, and wrestled with him on the ground. Lydia collected Fletcher, left the scene, and dropped him off at the border station, where customs officers held Fletcher face-first in a "dunk tank" to wash the mace off of his face. From the station, Fletcher was transported to the hospital, where he received six stitches and treatment for a black eye. In the meantime, a police officer responded to Michelle's residence. Anna Jean told the officer that she had hit Fletcher to protect Michelle; the officer inspected the women's hands but did not see any marks on them. From Michelle's house the officer proceeded to the hospital, where he spoke with Fletcher. The officer observed that Fletcher had a

"small cut below his right eye" and "some cuts and scrapes" on one of his right knuckles. Fletcher told the officer that he had sustained the cut on his hand "from a tooth" "in a drunken free-for-all."

[¶10] The trial court determined that "the defense of self-defense was generated by the evidence," but found that "the State has disproven that defense beyond a reasonable doubt." The court specifically found "beyond a reasonable doubt that the blow to [Anna Jean] was offensive force, not defensive force, as well as the blow that caused the injury to Michelle." It then found that the State had proved the elements of domestic violence assault and assault beyond a reasonable doubt, and convicted Fletcher accordingly. The court imposed two concurrent terms of ninety days' imprisonment, and granted Fletcher's request for bail pending appeal. For the assault conviction, it also ordered Fletcher to pay a $300 fine and $1,021.80 in restitution to Michelle. This appeal timely ensued.

## II. DISCUSSION[1]

[¶11] "When asserting a self-defense justification, a defendant bears the burden of production to generate the issue with sufficient evidence . . . ." *State v. Herzog*, 2012 ME 73, ¶ 8, 44 A.3d 307. To determine whether self-defense has been placed in issue, the trial court views the evidence in the light most favorable

---

[1] Because Fletcher's sufficiency challenge is confined to the issue of self-defense, we do not analyze the evidence as it relates to the elements of the crimes of which he was convicted.

6

to the defendant and considers whether there is some evidence to support each element of the justification. *State v. Ouellette*, 2012 ME 11, ¶ 13, 37 A.3d 921. The issue of self-defense is raised "when substantial evidence bearing on the issue is introduced, from whatever source." *State v. Millett*, 273 A.2d 504, 508 (Me. 1971). Although the defendant is tasked with the procedural burden of producing evidence that renders self-defense a reasonable theory for the fact-finder to consider, *id.*, the defendant's failure to present sufficient evidence may be rectified by the State's evidence, *see State v. Case*, 672 A.2d 586, 589 (Me. 1996) ("Either the State or the defense may introduce the evidence that generates the State's obligation" to disprove a statutory defense beyond a reasonable doubt.) (quotation marks omitted). If the court determines that self-defense is in issue, the State bears the burden of persuasion to disprove the justification beyond a reasonable doubt. *Ouellette*, 2012 ME 11, ¶¶ 8, 17, 37 A.3d 921.

[¶12] On appeal, Fletcher contends that the evidence was not sufficient to support a finding that the State disproved self-defense beyond a reasonable doubt. The State argues that because Fletcher denied striking Michelle or Anna Jean, the evidence was insufficient to generate the justification of self-defense in the first place.[2] In reviewing the trial court's determination that self-defense was

---

[2] "When the defendant appeals from a judgment of conviction, it is not necessary for the State to appeal. It may argue that error in the proceedings at trial in fact supports the judgment." 15 M.R.S. § 2115-A(3) (2014).

generated, we "view the facts supporting self-defense in the light most favorable to the defendant, review any factual findings for clear error, and conduct a de novo review of the trial court's decisions of law." *Id.* ¶ 18. In reviewing the court's finding that the State disproved Fletcher's claim of self-defense beyond a reasonable doubt, we "review the sufficiency of the evidence in the light most favorable to the State." *State v. Holland*, 2012 ME 2, ¶ 28, 34 A.3d 1130 (quotation marks omitted).

[¶13] At trial, the State presented evidence that Michelle and Anna Jean yelled at Fletcher, and that he struck them. Fletcher presented evidence that the women hit him and that, if he struck them, he did so in self-defense. Viewed in the light most favorable to Fletcher, this evidence could permit a finding that Fletcher (1) was not the initial aggressor, (2) reasonably believed that the women were about to use force against him and that he needed to use force to defend himself, and (3) used a reasonable degree of force to repel the attack. *See* 17-A M.R.S. § 108(1) (2014); *Ouellette*, 2012 ME 11, ¶ 14, 37 A.3d 921. The trial court correctly concluded that the evidence was legally sufficient to generate the issue of self-defense.

[¶14] After considering all of the evidence, the court found beyond a reasonable doubt that the State had disproved self-defense, and that Fletcher had used offensive force rather than defensive force against Michelle and Anna Jean.

8

Because Fletcher did not move for further findings of fact, *see* M.R. Crim. P. 23(c),[3] we assume that the court made such findings as are supported by the evidence necessary to sustain the court's ultimate conclusion, *see State v. Porter,* 1997 ME 74, ¶ 5, 693 A.2d 743.

[¶15]  Viewed in the light most favorable to the State, the evidence amply supports the court's finding that Fletcher applied offensive force to Michelle and Anna Jean.  The court could rationally have credited Michelle and Anna Jean's testimony that Fletcher was the initial aggressor.  It also could have found that, even if the women were the initial aggressors, Fletcher used an unreasonable degree of force in responding to the women's attack, based on the evidence that (1) Fletcher's hand was cut, but the women's were unscathed, and (2) Fletcher's injuries were less serious than the women's.  Either way, competent evidence supports the court's ultimate finding that the State disproved Fletcher's self-defense justification beyond a reasonable doubt.

The entry is:

> Judgment affirmed.

---

[3]  The Maine Rules of Unified Criminal Procedure took effect in Washington County on July 1, 2015. M.R.U. Crim. P. 1(e)(3).  They were not in effect at the time of Fletcher's trial.

**On the briefs:**

Jeffrey C. Toothaker, Esq., Ellsworth, for appellant Stanley Fletcher

Matthew Foster, District Attorney, and Ethan Plaut, Asst. Dist. Atty., Prosecutorial District VII, Machias, for appellee State of Maine

Machias District Court docket number CR-2014-178
FOR CLERK REFERENCE ONLY